27 C.C.P.A.(Patents)

## In re REYNOLDS.
## Patent Appeal No. 4264.

Court of Customs and Patent Appeals.
Feb. 26, 1940.

McLaughlin & Wallenstein, of Chicago, Ill. (I. L. Wolk, of Washington, D. C., and Sidney Wallenstein, of Chicago, Ill., of counsel), for appellant.

Howard S. Miller, of Washington, D. C., for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

GARRETT, Presiding Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming that of the examiner rejecting claims numbered 1 to 7, inclusive, 9 and 11 (being all the claims) of appellant's application for patent, entitled "Improvements in Margarine." The rejection was based on the ground of lack of invention over a patent, No. 1,917,254, granted to Benjamin R. Harris, July 11, 1933.

All the claims except No. 11 are method claims. Claim No. 4 was regarded by the board as being the most specific. For illustrative purposes we quote Nos. 1, 4, and 11.

"1. The method of producing an improved non-weeping margarine which comprises forming a plastic emulsion of triglyceride oleaginous and aqueous constituents, and blending into said plastic emulsion a proportion of the order of 1% of an anti-weeping agent comprising a chemical compound selected from the group consisting of higher ethers and higher esters of glycerine containing one free glycerine hydroxy group, said anti-weeping agent being of a character and employed in such amounts as to result in substantially no stiffening action on the oleaginous portion of the margarine.

"4. The method of producing an improved non-weeping margarine which comprises forming a plastic emulsion of triglyceride oleaginous and aqueous constituents, and blending into said plastic emulsion as an addition product a proportion of the order of 1% of di-olein.

"11. An improved non-weeping margarine comprising an emulsion of oleaginous and aqueous constituents, and having included therein a proportion of the order of 1% of a higher fatty acid diglyceride, said oleaginous constituent comprising a blend of oils and fats including a relatively high melting point fat to impart body to the oleaginous constituent and cause the margarine to be self-sustaining at ordinary room temperatures, and the diglyceride being of a character and present in such an amount as to have substantially no stiffening action."

Appellant's brief states:

"The present invention is concerned with improvements in margarine, frequently, particularly in the past, denoted as oleomargarine, used as a shortening and spread for bread in place of butter.

"Margarine is a plastic emulsion of oleaginous and aqueous materials and is usually made by churning a proper mixture of edible triglyceride oils and fats with aqueous material, ordinarily cultured milk, and then crystallizing the resulting emulsion by contacting the same with a refrigerated medium which may be cold water or a refrigerated metallic surface such as the exterior of a drum or the like. The solidified or crystallized emulsion is then tempered and kneaded, salt and preservative being incorporated therein, and then the product is cut into the usual quarter-pound, half-pound or pound packages and wrapped in the usual manner.

"As stated hereinabove, margarine is a plastic emulsion of oleaginous and aqueous materials. On standing, either in or out of its packages, water tends to separate from the margarine, this separation being denoted in the trade as 'weeping,' 'leaking' or 'sweating.' The result has been that the packages become messy, interfering with storage and shipment of the product. In addition, the margarine, after moisture has leaked out therefrom, suffers an adverse change in texture. Furthermore, in order to insure that a package will contain, for example, one pound of margarine when it reaches the consumer, it has been necessary to incorporate more than a pound of the product in the package, making allowance for the loss which would result from leakage of moisture. Other disadvantages arising from this leakage characteristic of margarine are known to those skilled in the art but it is believed unnecessary to discuss the matter in further detail.

\* \* \* \* \* \*

"The present invention is based upon the discovery that *di*glycerides such as *di*olein, or other *di*glycerides of a character such as to exert no stiffening action on the margarine, when added to margarine in the proportions of the order of 1 per cent or more, substantially eliminate weeping or leakage of moisture from the margarine. It is this discovery, defined in terms of varying scope, which the present application seeks to protect."

The contention on behalf of appellant is somewhat unusual as later will appear.

The statement of the examiner says:

"There appears to be no question but that the problem of the patent is identical with that of the instant application. Harris discloses the use of monoglycerides and diglycerides, but prefers to use the monoesters. On page 2, column 1, lines 45 to 56, there is a definite disclosure of the use of diglycerides including distearates, dipalmitates, and dioleates. The dioleate compound would not improve the stiffening of the margarine. Of this there can be no question. The proportions disclosed in the patent are those used in the claims—that is, about 1%.

"The procedure employed by applicant is that followed by Harris in introducing the ester into the margarine."

The board stated the same in different phraseology.

These findings of disclosure in the Harris specification are conceded to be correct, but it is contended that certain language in that specification excludes the employment of diglycerides and that they are excluded from the claims of the Harris patent, it being asserted that "\* \* \* it was Harris' belief that *di*glycerides would be inoperative for the purpose of reducing weeping of margarine."

The language of the specification upon which this contention is based reads: "It is not to be supposed that all substances of the general class described are suitable for use in accordance with my invention. For example, there are carboxylic esters of hydroxy substances containing unesterified hydroxy groups which are not sufficiently hydrophyllic to offer any marked advantage over the fats and oils used heretofore. Examples of such compounds are diacyl glycerols, such as, distearyl glycerol, dipalmityl glycerol, monopalmityl-monostearyl glycerol, dioleyl glycerol."

Commenting upon this, appellant's brief says: "The compounds mentioned in the last sentence of the above-quoted paragraph are *all* *di*glycerides, dioleyl glycerol being synonymous with diolein."

Appellant rests his case upon the construction of the language quoted from the specification, plus the fact that none of the claims of the patent specifically include diglyceride compounds, saying:

"The principal matter to be determined herein is as follows:

"1. If a prior art patent specifically states that a substance is unsuitable for a certain purpose, can that patent be considered to teach the utility of that substance for that purpose?"

Whether the last statement accurately presents the legal issue here may well be

656

questioned, but even were it accepted as correct, it seems quite clear to us that appellant places an erroneous interpretation on the language quoted from the specification. That language does not "specifically state" that diglycerides are "unsuitable" for use in making margarine. At most it says nothing more than that certain compounds (giving certain diglycerides as examples) do not "offer any marked advantage over the fats and oils used heretofore." Certainly that is far from saying that such compounds are "unsuitable" or that they would be "inoperative."

The fact that the patent does not contain a claim covering diglycerides is not of importance so far as the issue here is concerned. The test is disclosure. In re Newton et al., 96 F.2d 291, 25 C.C. P.A., Patents, 1106.

The several authorities cited by appellant have been examined. We are unable to agree that any one of them is in point under the state of facts confronting us here.

The decision of the board is affirmed.

Affirmed.